LARRY L. BAUMBACH
SBN 50086
Law Office of Larry L. Baumbach
2531 Forest Ave., Ste 100
Chico, California 95928
Telephone:  (530)891-6222
Fax:  (530)893-8245

ANIL PAI
SBN 234189
Pai Law Firm
2531 Forest Ave., Ste 100
Chico, California 95928
Telephone:  (530)924-5999
Fax:  (530)924-0969

Attorneys for Plaintiff
MICHAEL SEARS

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL SEARS<br><br>               Plaintiffs,<br><br>   vs.<br><br>CITY OF OROVILLE and DOES 1 through 50.<br><br>               Defendants | Case No.:<br><br>**COMPLAINT FOR DAMAGES**<br><br>**(DEMAND FOR JURY TRIAL)** |

## JURISDICTION and VENUE

1.     This action is brought by Plaintiff, MICHAEL SEARS (hereafter "OFFICER SEARS" or "SERGEANT SEARS" or "SEARS"), an African American male, in his individual capacity, pursuant to 42 U.S.C. §1983 to redress the violation by Defendant, CITY OF OROVILLE, of SERGEANT SEARS' right secured by the First, Fifth and Fourteenth Amendments to the United States Constitution and by California Code of Civil Procedure 51.7, et seq.

1

2.      Additionally, this Court has pendent jurisdiction under the Fair Employment and Housing Act (FEHA) California Government Code section 12940 et seq., as well as California Labor Code §1102.5

3.      The matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, arises under the statutes and laws of the United States, and is brought for equitable relief and money damages under these acts of Congress providing for the protection of Civil Rights.  Plaintiff's claims for damages also arise under California Government Code section 12940 et seq. (FEHA), and under California Statutes providing for damages including front pay, back pay, general damages, and attorney's fees. As such, the Court has jurisdiction of this action under 28 U.S.C. §§1331, 1332, 1343 and 1367.

4.      Defendant, CITY OF OROVILLE, and DOES 1 through 50, are and were at all times mentioned herein, a city located in Butte County, California; law enforcement DOES 1-50 are employed and/or agents by the CITY OF OROVILLE. Said DOES are sued individually and in their official capacity.  At all times herein mentioned, Defendants DOES 1 through 50 were acting under color of state law.

5.      The Defendant, CITY OF OROVILLE, is and was at all times mentioned herein a body politic located in Northern California and within the Eastern District Federal Court and employed the Oroville officers and personnel mentioned herein and was organized and exist under and by virtue of the laws of the State of California.

## FACTS COMMON TO ALL CAUSES OF ACTION

6.      SERGEANT SEARS, an African American male, is a veteran law enforcement officer of more than twenty years. SERGEANT SEARS first began employment as an officer at Defendant, CITY OF OROVILLE, on or about 2004 and left to pursue other law enforcement opportunities in 2007. During that initial stint with the Department, OFFICER SEARS received several awards, including the Chief's Award in 2005.

2

COMPLAINT FOR DAMAGES

7.      OFFICER SEARS returned as an officer at Defendant, CITY OF OROVILLE, in 2017; however, conditions at the Department had taken a drastic change for the worse. More specifically, and as discussed more fully below, the Department leadership was engaged in corrupt and unlawful practices and expressly discriminated against OFFICER SEARS because of his race.

8.      On or about August 16, 2018, OFFICER SEARS was at an empty desk in the Sergeant's Office and was given permission to use the empty desk by Sgt. Steve Solano. Lt. Chris Nicodemus approached OFFICER SEARS and told him that his presence in the Sergeant's Office was offensive to others and that he needed to gather his things and leave. OFFICER SEARS responded "Okay. I'll also drink from the colored-only water fountain." Lt. Nicodemus replied "Yeah." No such advisement had ever been given to any white officers.

9.      The disparate, racially motivated mistreatment of OFFICER SEARS continued and in October of 2018 he prepared an email to the Department leadership, including then-Chief Bill LaGrone, Lt. Nicodemus and Officer Breck Wright (Union Representative). Therein, OFFICER SEARS raised the following issues:

•       Hostile work environment complaint against Sgt. Joe Deal: OFFICER SEARS filed formal grievance about Joe Deal, stating that he wanted a work place free from harassment and hostile work environment.

•       Reported John Sanzone mishandling evidence: In that same October 2018 grievance, OFFICER SEARS reported that Officer John Sanzone left critical rape evidence in an unsecured area of the PD (next to Sgt. Deal's desk) where convicted felons had access (the Department used felons to clean the facilities at that time). Additionally, Officer Sanzone wrote in his report that he had "booked" the evidence the same day he collected it, which was false.

•       Reported John Sanzone mishandling contraband: In that same October 2018 grievance, OFFICER SEARS reported John Sanzone leaving meth, a broken

COMPLAINT FOR DAMAGES

meth pipe, and other evidence in his patrol vehicle (violation of policy). OFFICER SEARS took photos and let administration know the day that this was discovered.

     • <u>Complaint about being asked to leave Sergeant's Office</u>: In that same October 2018 grievance, OFFICER SEARS raised the issue of Lt. Nicodemus telling SEARS he had to leave the Sergeant's office, because his presence made others "uncomfortable" because he was African American.

10.     Despite the seriousness of the issues raised in the memo, which included racial discrimination, falsification/spoliation of evidence and violations of critical Department policies, no one from the Department leadership or administration ever contacted OFFICER SEARS, interviewed him, investigated these complaints, or provided a closure letter, as was required by Department policy.

11.     Instead, Department leadership and officers began a campaign of retaliation and retribution against OFFICER SEARS. More specifically, in February of 2019, Sgt. Deal, Lt. Nicodemus, and Officer Sanzone colluded and retaliated against OFFICER SEARS by creating a false incident/investigation against him regarding impropriety that never occurred. Conveniently, all three officers who OFFICER SEARS had filed the October 2018 complaint against were all involved in allegedly investigating the fabricated allegation they manufactured against OFFICER SEARS. Notably, none of the three officers had any body camera recordings, audio recordings, or written statements from anyone, other than themselves, in the purported allegation of impropriety they created against OFFICER SEARS.

12.     On or about April 9, 2019, Sgt. Joe Deal was promoted to Assistant Public Safety Director (Asst. Chief of Police and Fire). Near the date of his promotion, Deal informed contacted OFFICER SEARS that Chief LaGrone had been selling department guns and ammunition for years and pocketing the money. Deal said that if someone taped a voice recorder under LaGrone's desk, they'd be a millionaire, because Chief LaGrone talks disparagingly about females, Blacks, Gays, Hispanics, and others.

4

13.     On May 19, 2019, after being promoted, Asst. Chief Deal cornered OFFICER SEARS in the break room and told him that he needed to use Deal's wife as a real estate agent to purchase a home and that if he didn't, she would never speak to SEARS or forgive him. In June of 2019, OFFICER SEARS purchased a home and did not ultimately use Asst. Chief Deal's wife as his real estate agent, which infuriated Chief Deal.

14.     In August of 2019, Deal was promoted yet again and became the Public Safety Director (Chief of Police and Fire). At the swearing in ceremony of new hires, OFFICER SEARS was talking with City Administrator (and back-and-forth acting Chief) Bill LaGrone. LaGrone asked SEARS why SEARS' wife hadn't called LaGrone in sometime. LaGrone said "I don't know what she sees in you. I make a lot more money than you do." LaGrone then said that if OFFICER SEARS' wife ever needed help getting pregnant, she could call LaGrone for help.

15.     OFFICER SEARS later reported LaGrone's improper comments to the Head of HR and the attorney for the City and neither ever responded or investigated this or addressed it whatsoever.

16.     On August 26, 2019, OFFICER SEARS was promoted to Sergeant. Thereafter, he was told that the only reason he was promoted was because he was African American. SEARS was the only sergeant applicant who had a bachelor's degree and 16 years of experience.

17.     On February 12, 2020, SEARS filed a formal complaint against John Sanzone for making false allegations, disparaging remarks, and untrue rumors about SEARS. Sanzone spread these false rumors to several members of the Department, which negatively affected SEARS professional and personal reputation. Despite SERGEANT SEARS making this Complaint, no one from leadership or administration ever responded to him, interviewed him, investigated these complaints, or ever provided SEARS with a closure letter or even an indication that any investigation was conducted, as required by Department policy

COMPLAINT FOR DAMAGES

18.     On February 29, 2020, SERGEANT SEARS sent an email to Lt. Zarate documenting his concerns about John Sanzone stealing City funds, by way of fraudulent timecard certifications. Specifically, that on February 4, 2020 Sanzone left work early but lied on his timecard about how long he worked (lied by reporting he worked 6 hours more than he did). Multiple officers corroborated this and also found multiple additional days where John Sanzone put hours on his timecard that he did not work. Specifically, Officer Breck Wright confirmed this with the Finance Dept., and brought this to the administration's attention.

19.     Additionally, SERGEANT SEARS' February 29, 2020 email also detailed Sanzone requesting subordinate officers still in training (and under Sanzone's supervision) to lie for him—and tell his girlfriend that he was staying the night at an officer's house, when Sanzone was not in fact at the officer's house. SEARS' concern about this was that Sanzone was enlisting young subordinate officers to lie.

20.     Despite this Complaint, no one from the Department's leadership or administration ever responded to or interviewed SEARS, and to SEARS' knowledge, ever investigated these complaints. SEARS later learned that Internal Affairs ("IA") matter was supposedly opened for this complaint. After making several requests for a closure letter, SEARS received it nearly a year later, in January 2021, which essentially stated that the Department did not feel the need to do a formal investigation on John Sanzone. SEARS had asked for an IA closure letter on the report he made about Sanzone, because John Sanzone had previously been demoted for theft of public funds, but then re-promoted to sergeant.

21.     On June 3, 2020, SERGEANT SEARS met with Lt. Solano and followed up with a written memo regarding a complaint of sexual harassment by a young female employee against Sgt. Ray Stott. The female employee was on SERGEANT SEARS' team, and she came to him upset and complaining about harassment by Sgt. Ray Stott and a comment he made to her, asking if she liked "the taste of pussy."

COMPLAINT FOR DAMAGES

22.     Because of the severe nature of the complaint, SERGEANT SEARS knew he had to document it and report it. Sgt. Stott also made a comment to a group of officers, including a new female officer, about "smashing pussy" when describing a cat being struck by a patrol car.

23.     The sexual harassment complaint against Stott was investigated as an IA matter. An outside law firm was hired to conduct the investigation. Later in the year, after the firm's investigation ended, they recommended that Sgt. Stott be fired. However, Chief Joe Deal decided to ignore the law firm's recommendation and did not fire Stott, but released him from his Sergeant's Probation, putting him back in the position of patrol officer (later in the year).  However, since Chief Deal was close with Stott, he allowed Stott to work multiple overtime shifts (allowing for increased pay) and remain in charge of specialized overtime details, and allowed him to continue training new hires.

24.     On July 31, 2020, an African American woman who lived in Oroville came to Department and complained that she had experienced racial discrimination by an Oroville employee. She later went on to write Chief Deal a three-page letter describing the discriminatory experience. Deal did not investigate the matter, but instead called SERGEANT SEARS in and said: "Here, you know how to handle *these people*. Handle it."

25.     On August 20, 2020, Chief Deal wrote a letter to SERGEANT SEARS advising that Deal was extending his probation as a sergeant and not giving him an annual merit pay increase during the probation extension. SEARS was scheduled to complete his Sergeant Probation just five days later (on Aug. 25, 2020). The reason for extending his probation was that there was "insufficient information to find that [SEARS] demonstrated the requisite knowledge, skills, and abilities warranting successful completion of probation as a Sergeant." This extension of probation was in spite of all the successful performance evaluations for the entire duration of SEARS' year as a sergeant. Thus, rather than actually being based on performance, was

7

COMPLAINT FOR DAMAGES

punishment for SEARS making complaints about improper, unethical, and unlawful conduct at the Department, and was racially motivated since no other white sergeants in SEARS' position was denied such a merit increase when due.

26.　Along these same lines, on or about October 7, 2020, SEARS learned that the leadership had signed up Sgt. Joel Malinowski (a friend of Chief Deal, who is Caucasian and was hired as a sergeant well after SEARS) for POST supervisory school, which is required under the law for sergeants to take within a year of being promoted. SEARS raised these issues in an email to Chief Deal, Lt. Zarate, and the HR Director, yet he received no response and Sgt. Malinowski went to POST Supervisory School before SEARS, though SEARS was past the mandatory one-year POST deadline for the school, and Malinowski was nowhere near the deadline.

27.　On October 10, 2020, after continuing to receive retaliatory and hostile action against him, SEARS emailed Chief Deal, Lt. Zarate, and the HR Director setting forth the adverse action taken against his employment, yet no one responded, or even acknowledged the concerns.

28.　On October 21, 2021, SEARS received an email from a dispatcher, who advised him that the female employee who had previously filed a sexual harassment complaint against Sgt. Ray Stott, had been moved from patrol to dispatch (an unfavorable move) and was being directly supervised by her harasser, Stott.　The female employee felt as though she was being retaliated against for making the sexual harassment complaint against Stott. SEARS forwarded the dispatcher's concerning email to Chief Deal, Lt. Zarate, and Lt. Solano. Chief Deal responded to the dispatcher, by stating that the dispatcher should "focus on dispatching" while the Chief would focus on "running and overseeing the department as your Chief." The tone was rude and completely dismissive. The dispatcher gave her two-weeks' notice shortly after Chief Deal's email, and the Department did nothing to address the female employee's concerns.

8

---

COMPLAINT FOR DAMAGES

29.   On November 25, 2020, Chief Deal formally "wrote up" SERGEANT SEARS for insubordination, alleging: (1) SEARS did not complete a hand-written daily activity log (which no other unit or team was required to do); and (2) SEARS was doubled-up in a patrol car with SEARS' partner (Officer Robert Raiter) without permission, which again, no other team or officer was prohibited from doing).

30. In response to Chief Deal's write-up, SERGEANT SEARS pointed out that he did in fact complete daily logs, they were simply done electronically rather than hand-written. SERGEANT SEARS also showed Chief Deal communications from Lt. Zarate, wherein Lt. Zarate had given SERGEANT SEARS permission to be doubled-up with his partner when necessary (though no other employee was required to ask for such permission).

31.   Before being let go by the City Council, Chief Deal acted as the "impartial" Skelly Hearing Officer in SEARS' challenge of his write-up. SEARS objected to Deal being the officer because he was not impartial, was the subject of many of SEARS' complaints, and had a demonstrated bias against SEARS. The objection was ignored, and Chief Deal would later rule that his own write-up was substantiated and appropriate, just days before being released of his duties as chief. Thus, SEARS was not provided due process with regards to the disciplinary action taken against him.

32.   Thereafter, on December 2, 2020, SEARS was removed from his specialty assignments, was ordered to vacate his office, and his schedule was changed from day shift to night shift (which was the least favored schedule). Additionally, in contravention of Department practice, SEARS was not rotated off night shift after three months like all the other Caucasian employees, but was instead required to do six months back-to-back weekend graveyard shifts.

33.   On February 21, 2021, SEARS emailed Sgt. Sanzone, Lt. Zarate, and Chief Deal because he had learned, yet again, that John Sanzone was spreading false rumors and allegations against SEARS to other members of the Department that were impairing SEARS' ability to do his job.  Just three days after sending this email, on

9

February 24, 2021, SEARS received a Notice of Internal Affairs (IA) investigation against him for purportedly creating a "hostile work environment" for Sgt. John Sanzone as a result of SEARS reporting Sanzone's unethical and criminal behavior.

34.     Thus, despite SEARS documenting, for over a year, the fact that Sanzone (a Caucasian officer) was harassing SEARS (and creating a hostile work environment), lying on time cards, mishandling critical evidence and lying about it, involving subordinate officers in Sanzone's dishonesty, among other issues, Chief Deal and City Administrator Bill LaGrone decided no investigation was necessary for any of that, but a formal IA was necessary to investigate SEARS for reporting these things that Sanzone had been doing.

35.     The Department leadership and administration constantly engages in this retaliatory and disparate treatment of anyone who reports or complains about illegal or unethical conduct by its officers.

36.     More than a year and a half later, the IA Investigation against SERGEANT SEARS is still pending, which has prevented SERGEANT SEARS from working with another agency and leaving the CITY OF OROVILLE's Police Department. The CITY OF OROVILLE has also used this retaliatory IA Investigation to deny SERGEANT SEARS worker's compensation benefits.

37.     Along these lines, during the period of December 2020 to March of 2021, Officer Breck Wright found that Sanzone had failed to respond to approximately 80 calls, including domestic violence, suicidal subjects, missing juveniles, vandalism, trespassing, animal abuse, prostitution, and drug overdoses. One specific incident occurred on March 6, 2021, when citizens called 911 reporting than an elderly handicapped woman, who was unable to walk or access food, needed emergency law enforcement assistance. Sgt. John Sanzone failed to respond to that call. Instead, SERGEANT SEARS saw that Sanzone had not responded to the call during his shift, so SERGEANT SEARS responded when he got on duty, and found the woman sitting in her own urine and fecal matter, unable to move or access help. The treating doctor

said the woman was lucky to be brought in when she was, because she was on the verge of requiring a leg amputation, or worse due to her condition. All of this information was brought to the attention of Joe Deal, Bill LaGrone, and the CITY OF OROVILLE Human Resources, yet nothing was done to Sanzone. Instead of investigating Sanzone, Bill LaGrone decided to investigate Officer Wright and SERGEANT SEARS, and wrote up Officer Wright, alleging misuse of the computer when he looked up the public record calls that Sanzone failed to respond to.

38. In early May of 2021, SEARS noticed that in contravention of Department schedule practices and a promise by the CITY OF OROVILLE that he would be placed on weekday day shift as he was looking forward to and as he was supposed to rotate, SERGEANT SEARS was instead was put on back-to-back weekend shifts.  He brought this to the attention of HR Manager Liz Ehrenstrom and City Attorney David Ritchie. SEARS never received any email response from HR Manager Liz Ehrenstrom or City Attorney David Ritchie. Further, SEARS' schedule was never changed to allow him to work weekday day shift as promised. Instead, the weekday day shift was given to John Sanzone.

39. On July 5, 2021, SERGEANT SEARS was on duty when a citizen, who suffered with mental illness, came in to the police department to report that Sergeant Sanzone had stolen $1300 from the citizen during a recent arrest. The citizen said he had come in to report this theft multiple times, and he was informed by one sergeant that the citizen could not make that type of complaint and was told to leave. SERGEANT SEARS looked up the police log history and saw that the "sergeant" who told the citizen that he could not make such a complaint was John Sanzone himself. On July 8, 2021 and again on July 9, 2021, the citizen came in to again report the theft of his money by John Sanzone. On those dates, Sergeants Malinowski and Stott spoke to the citizen, but it appears neither documented it in accordance with departmental policy and the law, nor did they take any further action. SERGEANT SEARS was so fearful of being retaliated against further if he documented the citizen's complaint against

11

COMPLAINT FOR DAMAGES

Sanzone, that SEARS first contacted his attorney to ask advice on what to do. Ultimately, SERGEANT SEARS wrote a memo, as Department Policy required, detailing the citizen's report of Sgt. John Sanzone stealing $1300 from the citizen, and detailing the dates and police logs documenting when the citizen came in to report this theft.   SERGEANT SEARS sent this memo to Lt. Zarate and Acting Chief/City Administrator Bill LaGrone. SERGEANT SEARS was aware that this was at least the fourth unrelated citizen with mental health and/or criminal history who had alleged John Sanzone had stolen money from them while he worked at Oroville Police Department.

40. No one from the administration investigated Sgt. John Sanzone for the alleged theft from this citizen while he was employed at the Oroville Police Department, and instead SERGEANT SEARS was accused of and questioned during the IA Investigation against SEARS about having made up this theft complaint, was blamed for having filled out a formal complaint for the citizen, and was accused of conducting his "own investigation" into the theft by simply documenting it in a memo.

41. In December of 2021, Sgt. John Sanzone got a clean background from Bill LaGrone, HR, and the CITY OF OROVILLE, enabling him to obtain employment as a deputy sheriff with the Glenn County Sheriff's Office. While Sgt. Sanzone was free to obtain new employment opportunities, SERGEANT SEARS still had a retaliatory and manufactured IA pending over him for reporting Sanzone's unethical and illegal conduct, prohibiting SEARS from seeking new employment opportunities.

42. In September of 2022, while employed at the Glenn County Sheriff's Office, John Sanzone was placed on administrative leave after yet another citizen reported Sanzone had stolen money from him during an arrest, but this time it occurred in Glenn County.

43.   On October 27, 2021, SERGEANT SEARS sent a memo to Bill LaGrone (acting Chief and City Administrator) telling him that a newly-hired police officer had made concerning comments about giving a group of black people "enough rope to hang themselves." SERGEANT SEARS also advised LaGrone about other concerning

12

conduct by the officer, who was Caucasian. LaGrone responded via email to SEARS, stating: "I am very disappointed in you." Thus, rather than addressing the racist statements made by the officer, Lagrone was disappointed in SEARS for bringing the statements to LaGrone's attention. Furthermore, LaGrone also then took away SEARS' ability to view the body camera recordings of other officers (as this was how SEARS was able to observe some of the concerning conduct). At that time, SERGEANT SEARS served as the Field Training Officer Coordinator, and needed the ability to review body camera to ensure trainees were being properly trained and meeting standards.

44.     On October 28, 2021 (less than 24 hours after SEARS sent the above memo to LaGrone), LaGrone sent SEARS an email that accused him of working hours that he was not permitted to work and told SEARS he could no longer work before 6 a.m. or after 6 p.m.

45.     On November 27, 2021, that same officer (who SERGEANT SEARS had reported made potentially-racist statements and exhibited concerning behavior) was on duty and used excessive force on an arrestee—kicking him in the face and head multiple times. The officer then lied to the supervisor about his use of force and claimed he used no force at all. However, two other officers were present during this use of force and they documented it.

46.     After going to City Hall where Chief LaGrone's office is, Lt. Zarate ordered the two officers who witnessed the use of force to change their reports. One officer agreed to change his report because he was threatened that he was still on probation. The other officer refused to change her report and she has consistently been retaliated against since.

47.     Both of these officers who witnessed the use of force contacted SERGEANT SEARS and asked his advice on what to do about the use of force incident and about the directives to change their reports. SERGEANT SEARS advised them to report their concerns and seek the advice of the District Attorney's Office, as

13

COMPLAINT FOR DAMAGES

1   he believed any concern or memo he could draft would fall on deaf ears at the CITY
2   OF OROVILLE and would result in further retaliation against him. Ultimately, an
3   investigation was opened up by the District Attorney's Office. When the officers were
4   ordered to change their reports, they also reported this to the Chief Investigator. Upon
5   conclusion of the investigation, the officer who used excessive force (and who had
6   made the potentially-racist comments) was found to be untruthful (and had a history of
7   being untruthful), leading to his termination at the behest of the District Attorney's
8   Office.

9       48. On January 19, 2022, LaGrone called SEARS into his office regarding the IA
10  investigation that had been previously initiated against SEARS for purportedly creating
11  a hostile work environment for Sanzone (when SEARS reported Sanzone's unethical
12  and criminal behavior).   At that time, SEARS told LaGrone that he had no interest in
13  suing the CITY OF OROVILLE, as he had experience with litigation and it was awful
14  and a lot of people could be hurt in the process, but SEARS emphasized that the way
15  LaGrone and the administration had been handling (or mishandling) reports of
16  misconduct was extremely disturbing. LaGrone replied, "You can sue, no one will care.
17  I own the Council." During this discussion, LaGrone admitted that Sanzone had
18  previously committed theft of public funds and LaGrone said Sanzone apologized to
19  him, "took his lumps, and I brought him back."   LaGrone also discussed a female
20  sergeant and inferred that women don't belong in law enforcement, because it causes
21  male officers to fight the bad guys and then have to fight and "save" the female officers
22  as well. He said that when he was sued by a female sergeant, he was found in
23  contempt of court and fined $2500 but he didn't care, because he got promoted to City
24  Administrator and got a $30,000 pay raise. He said if he had to continue paying $2500
25  fines for contempt of court but get pay raises, he would do it every time.

26      49.   On April 6, 2022, nearly fourteen months after the IA investigation had
27  been initially opened against SERGEANT SEARS, he had a purported Skelly hearing.
28  After the hearing, LaGrone and the City Attorney told SEARS' attorney that they "loved

14

[SEARS] and didn't want to see him leave, since they thought he could be the next lieutenant." They continued stating that they wanted to work out his pending IA, and if SEARS would drop any potential civil lawsuit, the IA could be eliminated and there'd be no real discipline.

50.    On April 18, 2022, SEARS responded to a traumatic call involving the death of a two-month-old infant. After a twenty-year career of responding to traumatic emergency calls, this call caused extreme PTSD and anxiety, and the following day at work, SEARS passed out and went home for the rest of the day. SEARS has not been able to work since, and filed for Worker's Compensation Benefits, which was supported by a Worker's Compensation doctor diagnosing SEARS with work-related PTSD and anxiety.

51.    Another officer (who is Caucasian) also went to this call and also filed for Worker's Compensation Benefits. His claim was approved by the CITY OF OROVILLE as work-related PTSD and anxiety and he receives payment and treatment for it.

52. However, SEARS' Worker's Compensation claim was denied, and the Department has forced SEARS to use all of his leave banks and now be on leave without pay even though the Worker's Compensation physician has stated that SEARS is suffering from work-related PTSD and anxiety.

**FIRST CAUSE OF ACTION - VIOLATION OF CIVIL RIGHTS**

53.    SEARS incorporates by reference and re-alleges Paragraphs 1 to 52 of this Complaint.

56.    Pursuant to California law, at all relevant times in the Complaint, SEARS had a legally recognized property interest in his continued public employment with Defendant and had protected right in same.

55.    Defendants, acting under color of state law, deprived SEARS of his property interest in continued employment by engaging in a process that did not afford

SEARS procedural due process under either the Fifth and Fourteenth Amendments of the Constitution.

56.     Defendants' unlawful conduct has proximately caused SEARS actual damages, including lost income and employment benefits, emotional pain and suffering, and other damages.

## SECOND CAUSE OF ACTION – FEHA Retaliation

57.     SEARS incorporates by reference and re-alleges Paragraphs 1-56 of this Complaint.

58.     Defendant's retaliatory, negative employment actions against SEARS after he took action, including but not limited to, filing grievances and complaints about sexual harassment and discrimination at the Department, participating in and being interviewed or investigating wrongful and prohibited acts by employees and/or supervisors in the Department, and generally opposing workplace harassment.

59.     The retaliatory, adverse employment actions taken by Defendant was in direct violation of FEHA (Cal. Gov. Code section 12900 et seq.)

60.     Said wrongful and unlawful conduct by Defendant has caused monetary damages and pain and suffering, entitling him to damages per the FEHA.

## THIRD CAUSE OF ACTION Racial Discrimination

61.     SEARS incorporates by reference and re-alleges Paragraphs 1 to 60 of this Complaint.

62.     The Defendant is liable to SEARS as a result of its race discrimination against him in violation of the Fair Employment and Housing Act, the Equal Employment Opportunity Act.  Defendant's unlawful conduct has proximately caused SEARS actual damages including lost income and employment benefits, emotional pain and suffering, and other damages.

16

**FOURTH CAUSE OF ACTION Breach of Implied Contract**

63.    SEARS incorporates by reference and re-alleges Paragraphs 1 to 62 of this Complaint.

64.    SEARS has an implied employment contract with Defendant and an expectation that he would be employed in accordance with company policies as applied to Caucasian employees.  Defendant's conduct toward SEARS also violated the terms and policies of Defendant's Employee Handbook claiming to be an equal opportunity employer, thereby breaching SEARS' implied employment contract.

65.    Defendant's refusal to provide SEARS with terms, conditions and privileges of employment was without just cause, and in breach of Defendant's implied employment contract with SEARS.  Defendant is liable to SEARS for damages resulting from the breach of Defendant's implied employment contract with Plaintiff.

**FIFTH CAUSE OF ACTION – VIOLATION OF Labor Code § 1102.5**

66.    SEARS incorporates by reference and re-alleges Paragraphs 1 to 65 of this Complaint.

67.    Defendant, CITY OF OROVILLE, retaliated against SEARS because he disclosed violations of Federal and State law committed by Defendants and/or employees to governmental and/or law enforcements agencies, as alleged above.

68.    Defendants, CITY OF OROVILLE's retaliation against SEARS, as alleged above, was in direct violation of Cal. Labor Code § 1102.5 and said violation proximately caused SEARS monetary harm as well as emotional distress and pain and suffering.

///

///

///

17

WHEREFORE, PLAINTIFF DEMAND JUDGMENT AGAINST DEFENDANT for each cause of action herein:

1.    For general damages according to proof;

2.    For special damages according to proof;

3.    Attorney's fees as allowed by statute;

4.    For costs of suit;

5.    For prejudgment interest and post judgment interest according to law; and

6.    For such other further relief as the Court may deem proper.

**DEMAND FOR JURY TRIAL**

Plaintiff, MICHAEL SEARS, demands a jury trial.

Dated: September _15_, 2022

THE LAW OFFICE OF LARRY L. BAUMBACH

LARRY L. BAUMBACH

18

COMPLAINT FOR DAMAGES

**EXHIBIT A**

STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency          GAVIN NEWSOM, GOVERNOR

KEVIN KISH, DIRECTOR

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**
2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
(800) 884-1684 (Voice) | (800) 700-2320 (TTY) | California's Relay Service at 711
http://www.dfeh.ca.gov | Email: contact.center@dfeh.ca.gov

September 15, 2022

Michael Sears

RE:     **Notice of Case Closure and Right to Sue**
DFEH Matter Number: 202209-18250915
Right to Sue: Sears / City of Oroville

Dear Michael Sears:

This letter informs you that the above-referenced complaint filed with the Department of Fair Employment and Housing (DFEH) has been closed effective September 15, 2022 because an immediate Right to Sue notice was requested.

This letter is also your Right to Sue notice. According to Government Code section 12965, subdivision (b), a civil action may be brought under the provisions of the Fair Employment and Housing Act against the person, employer, labor organization or employment agency named in the above-referenced complaint. The civil action must be filed within one year from the date of this letter.

This matter may qualify for DFEH's Small Employer Family Leave Mediation Pilot Program. Under this program, established under Government Code section 12945.21, a small employer with 5 -19 employees, charged with violation of the California Family Rights Act, Government Code section 12945.2, has the right to participate in DFEH's free mediation program. Under this program both the employee requesting an immediate right to sue and the employer charged with the violation may request that all parties participate in DFEH's free mediation program. The employee is required to contact the Department's Dispute Resolution Division prior to filing a civil action and must also indicate whether they are requesting mediation. The employee is prohibited from filing a civil action unless the Department does not initiate mediation within the time period specified in section 12945.21, subdivision (b) (4), or until the mediation is complete or is unsuccessful. The employee's statute of limitations to file a civil action, including for all related claims not arising under section 12945.2, is tolled from the date the employee contacts the Department regarding the intent to pursue legal action until the mediation is complete or is unsuccessful. Contact DFEH's Small Employer Family Leave Mediation Pilot Program by emailing DRDOnlinerequests@dfeh.ca.gov and include the DFEH matter number indicated on the Right to Sue notice.

STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency                    GAVIN NEWSOM, GOVERNOR

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**                                        KEVIN KISH, DIRECTOR

2218 Kausen Drive, Suite 100 I Elk Grove I CA I 95758
(800) 884-1684 (Voice) I (800) 700-2320 (TTY) | California's Relay Service at 711
http://www.dfeh.ca.gov I Email: contact.center@dfeh.ca.gov

To obtain a federal Right to Sue notice, you must contact the U.S. Equal Employment Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of this DFEH Notice of Case Closure or within 300 days of the alleged discriminatory act, whichever is earlier.

Sincerely,


Department of Fair Employment and Housing

# COMPLAINT OF EMPLOYMENT DISCRIMINATION
## BEFORE THE STATE OF CALIFORNIA
## DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING
### Under the California Fair Employment and Housing Act
### (Gov. Code, § 12900 et seq.)

**In the Matter of the Complaint of**

Michael Sears

DFEH No. 202209-18250915

Complainant,

vs.

City of Oroville
1735 Montgomery Street
Oroville, CA 95965

Respondents

---

**1.** Respondent **City of Oroville** is an **employer** subject to suit under the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.).

**2.** Complainant **Michael Sears**, resides in the City of **Chico,** State of **CA.**

**3.** Complainant alleges that on or about **September 15, 2022**, respondent took the following adverse actions:

**Complainant was discriminated against** because of complainant's race, color, association with a member of a protected class and as a result of the discrimination was suspended, denied any employment benefit or privilege, denied reasonable accommodation for a disability, denied or forced to transfer.

**Complainant experienced retaliation** because complainant reported or resisted any form of discrimination or harassment and as a result was denied equal pay, suspended, other, denied work opportunities or assignments, denied or forced to transfer.

**Additional Complaint Details:** Sergeant Michael Sears is an employee of the City of Oroville, California Police Department. Sergeant Sears is one of only two African American employees in the department. The subculture of the Oroville Police Department consists of a

-1-

Date Filed: September 15, 2022

Form DFEH-ENF 80 RS (Revised 02/22)

Chief, Lieutenants, and some lower ranks who engage in organizational retaliation against officers who report misconduct or who are whistleblowers regarding observed unlawful behavior in the department.

In his service to the Oroville Police department, Sergeant Sears has observed numerous acts of retaliation. In the course of his duties, Sergeant Sears has reported time card fraud, theft from the department, mishandling of evidence, reported theft from an arrestee, and sexual harassment of female employees. In one such instance, a female officer who reported an incident of sexual harassment was transferred to an unfavorable assignment under the direct supervision of the very officer she identified as having sexually harassed her.

While Chief, Joe Deal compelled officers to use the services of Deal's wife, a realtor, if they were engaging in any real estate transactions. Refusal to employ Deal's wife resulted in an unfavorable job assignment, denial of overtime opportunities, and personal disapproval by the Chief.

In the course of Sergeant Sears' service, retaliation against him took many forms, including but not limited to the following:
1.      Opening an internal affairs investigation of Sergeant Sears effectively preventing Sergeant Sears from seeking employment elsewhere while under a cloud of an investigation.
2.      Terminating officers with whom Sergeant Sears had a close working relationship.
3.      Changing the work schedule without advance notice.
4.      Denying overtime opportunities.
5.      Extending Sergeant Sears's probationary period for no apparent reason or purpose.
6.      Denying Sergeant Sears, a merit salary increases.
7.      Prohibiting Sergeant Sears from using convenient parking locations at the department.
8.      Refusing to investigate any allegation of misconduct raised by Sergeant Sears.
9.      Issuing disciplinary write-ups on Sergeant Sears for riding together in a patrol car with his partner, while other officers were permitted to do so freely.
10.     Keeping the above write-up open and pending without any final decision for more than 11 months, thereby eliminating Sergeant Sears' ability to apply to any other agency.
11.     Shunning Sergeant Sears by Chief, Lieutenants, and others.
12.     Sending the newest Sergeant to supervisory school instead of Sergeant Sears, when Sergeant Sears was due and scheduled to attend first.
13.     Denying Sergeant Sears, the opportunity to work in investigations, though he requested to do so many times.
14.     Requiring Sergeant Sears to go through an "interactive process" wherein he was forced to discuss sensitive personal medical issues in order to receive an ADA recognized accommodation while another employee making an identical accommodation request was not required to engage in such a process.
15.     Changing Sergeant Sears' assignment wherein his hours were reduced after receiving the ADA accommodation.

Complaint – DFEH No. 202209-18250915

Date Filed: September 15, 2022

Form DFEH-ENF 80 RS (Revised 02/22)

All of the foregoing constitutes a violation of the California FEHA, the officer's rights under California Law, and the California Labor Code. To illustrate the misconduct that has been directed to Sergeant Sears, numerous complaints have been made against Chief Joe Deal regarding a hostile work environment. Sergeant Ray Stott engaged in sexual harassment of female officers and suffered demotion to a patrol officer but was awarded by Chief Deal with a substantial increase in his overtime shifts, and remained an officer in charge and received continued participation in a grant-funded overtime project as well as the ability to reward other officers of his choice with overtime hours. Members of the department who have been in opposition to such conduct have been demoted, disciplined, removed from responsibilities, and in some cases experienced their employment terminated.

Sergeant Sears had personally experienced an unanticipated change in work schedules and work assignments, been shunned by administrative officials who consistently ignored emails and his very presence in the department. Sergeant Sears has been removed from a P.O.P team unit which he helped develop and was placed on night shift patrol while other officers were allowed to work with the P.O.P team and receive overtime. Sergeant Sears has received write-ups for what other officers performed with impunity.

Former Chief Deal sold police department ammunition purchased by the police department to Vice Mayor Scott Thompson. Vice Mayor Scott Thompson paid then-Chief Deal five-hundred dollars in cash in exchange for department ammunition. Former Chief Deal even went so far as to detonate a percussion grenade in the parking lot of Oroville Police Department while occupants of a nearby building were working inside. He did not notify the nearby building, nor did he notify the employees inside. The explosive rattled the building, and the records clerk working inside eventually went out on stress leave because of the trauma. The percussion grenade was particularly traumatic, because the clerk had recently nearly been struck while working at her desk by a vehicle that plowed through the Oroville Police Department walls. The loud explosion triggered the trauma from the critical incident that happened on duty months earlier.

All of the foregoing culminated on February 24, 2021, in a notice of administrative investigation initiated by Former Chief of Police Joe Deal. Then, on July 15, 2021, current Chief of Police Bill LaGrone, who succeeded Chief Deal, served Sergeant Sears with notice that Sergeant Sears was scheduled to participate in a mandatory interview for the investigation. In this notice, Chief Bill LaGrone added several new allegations in the investigation against Sergeant Sears., Sergeant Sears was informed the allegations against him included such conduct as raising complaints and making negative comments about an employee who was engaged in unethical and illegal behavior. The administrative investigation notice to Sergeant Sears also included non-actionable claims such as the act of exchanging a hub cap between two department vehicles. The notice of administrative investigation contained trivial incidents that the administration hopes will sufficiently stain Sergeant Sears' reputation to make his employability with other facilities impossible and stain his own reputation and ability to perform his job within Oroville Police Department. The accusations are designed to prevent Sergeant Sears from exercising his rights to report unlawful, unethical, or criminal conduct that he observes occurring within the police

-3-

Complaint – DFEH No. 202209-18250915

Date Filed: September 15, 2022

1
2
department. This retaliatory investigation fosters an environment of fear and intimidation to allow the corruption within the department to continue unabated and unchecked.

3
4
Underneath the facade of criticism, retaliation, and pretextual discipline is an unaddressed presence of racial hatred that permeates the department administration. Numerous episodes of racially-motivated criticism have made it clear that Sergeant Sears is not to succeed, thrive, or be tolerated in the department.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

-4-

*Complaint – DFEH No. 202209-18250915*

27

Date Filed: September 15, 2022

28

1  VERIFICATION

2  I, **Larry L. Baumbach**, am the **Complainant** in the above-entitled complaint.  I have
3  read the foregoing complaint and know the contents thereof.  The same is true of my
   own knowledge, except as to those matters which are therein alleged on information
4  and belief, and as to those matters, I believe it to be true.

5  On September 15, 2022, I declare under penalty of perjury under the laws of the State
   of California that the foregoing is true and correct.
6

7                                                                                      **Chico, CA**

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26                                                             -5-
                                   *Complaint – DFEH No. 202209-18250915*
27
   Date Filed: September 15, 2022
28

                                                          Form DFEH-ENF 80 RS (Revised 02/22)